ROBERT SMITH v. THE STATE.

No. 2323.   Decided May 28, 1902.

**1.—Race Prejudice—Grand Jury—Quashal of Indictment.**

On the trial of a negro for murder, the indictment will be quashed if, on motion to that effect, it be shown that in the selection of the commissioners to draw the grand, jury and in the formation of the grand jury which found the indictment, negroes were excluded from said commissioners and from said grand jury on account of race prejudice.

**2.—Same—Evidence.**

On the trial of a motion to quash the indictment because of race discrimination in the appointment of commissioners to select the grand jury, it was error to exclude the testimony of the judge who presided and appointed the jury commissioners, to the effect that he would not have selected a jury commissioner whom he believed would draw negroes on the grand or petit jury on account of conditions existing in the county, which, in his opinion, were prejudicial, on the part of the whites, to the negroes; that in appointing the commissioners he had selected men (one of whom was a Republican) because he desired to avoid a race conflict; and that he did not believe the white people of the county would support any man for district judge or sheriff they thought would be in favor of having colored people serve on juries.

**3.—Same.**

On the trial of a question of race prejudice, involved in a motion to quash the indictment, where the defendant on trial is a negro, the decisions of the United States Supreme Court authorize the widest latitude in the introduction of testimony.

Appeal from the District Court of Grayson.   Tried below before Hon. Rice Maxey.

Appeal from a conviction of murder in the first degree; penalty, death.

Appellant, a negro, was charged by the indictment with the murder of Arria Taylor (a white woman) on the 19th day of January, 1901, by cutting her with a knife.

This is the second appeal.   Smith v. State, 42 Texas Crim. Rep., 220. On the former appeal the judgment was reversed and prosecution dismissed on account of race prejudice shown in the selection of the grand and petit juries.

*J. P. Cox,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal.

When the case was called for trial, and before announcement, appellant presented a motion to quash the indictment, on the ground that the appellant being a colored person, members of his race were discriminated against in the formation of the jury that returned the bill of indictment. The motion is in proper form and was drawn under that clause of the fourteenth amendment of the Constitution of the United States which has been construed to guarantee to colored persons the equal protection of the laws in the formation of grand and petit juries. The motion was contested by the State, and testimony was heard thereon, and the motion overruled, and appellant reserved his exception. In addition to the testimony admitted by the court, appellant offered the testimony of other witnesses, which, on objection, was excluded by the court, defendant reserving his exception thereto. We will consider both bills of exception together. It was shown, in support of the motion, that the population of Grayson County consisted of 60,000 or 70,000 people; that there were about 8000 voters in the county; of these about 1500 were colored voters; that of the negro voters about one-third were qualified jurors. But since reconstruction, that is, for about twenty-five years, no negro had been known to sit on a grand or petit jury in the county; that white jury commissioners were invariably appointed by the courts to draw the jury lists, and that no negroes were drawn. On one occasion a negro was accidentally drawn, but he was gotten rid of on some pretext. The case having been previously reversed on the ground of discrimination against the colored race in the formation of the grand jury, the learned judge instructed the jury commissioners who were impaneled to draw a list of grand jurors, who subsequently presented this indictment, and among other things told them, in the selection of grand and petit jurors, not to discriminate against the colored race. The jury commissioners selected by him were all of the white race. Judge Maxey, who presided at the trial, testified substantially that of his personal knowledge he did not know it to be a fact that negroes had been excluded from service as jury commissioners and grand and petit jurors because they were negroes; that as district judge he might appoint a negro as jury commissioner if he were best qualified; but that was a matter that would have to be passed upon when it was presented; that he did not know what he would do as to selecting a jury commissioner if he believed that the negroes were equal in intelligence and fitness with the white people; that was a question involved in the condition of mind that he had never yet attained, and that he did not know what he would do in such case; that there might be a condition of affairs that would make him believe it was best for the administration of the laws of the country to appoint a negro as jury commissioner; if so, he would appoint him. If such condition of affairs were brought about he did not know what he would do. That there

was a prejudice against the colored man serving as a juror or jury commissioner; and he thought it detrimental to the public generally and detrimental to the colored race to appoint them on juries; that he did not know a colored man, unless it was Dr. Prince, who possessed all the requirements of a jury commissioner; that he knew a great many negroes in the county who could read and write, also a great many who were householders and freeholders; that he had no prejudice against the colored race which would cause him to discriminate against them in the administration of his office. The three jury commissioners who were appointed by Judge Bliss, the predecessor of Judge Maxey, all testify, their testimony being substantially to the same effect. They state that they selected the best material to compose the grand jury; and also the best they knew for the petit jury; that they were furnished with the assessment rolls of the county, and opposite the negroes was the abbreviation "col.," which they understood to mean colored. They state that their qualifications were equal to those of the whites. He also stated that if a negro were drawn on the jury, they did not discuss the question of discrimination, only to a limited extent. One testified that they discussed the matter, and if he knew of any colored men who possessed sufficient qualifications they would not have discriminated against them on account of race and color. He also states that if he thought it were necessary he would have selected a negro on the jury, but that the negroes who were qualified as jurors were very few in the county. Another of the jury commissioners stated that there might exist in the county many good white people with sentiments of antipathy or prejudice against the colored people serving as jurors; that he may have heard men express themselves that they would not serve with a negro; that they selected 360 petit jurors for the term, and a list of grand jurors besides; all of them were white men; that in the selection of jurors he would have selected a negro if he had thought their qualifications were equal to those of the whites. He also stated that if a negro were drawn on the jury he would serve with him, but did not regard the colored man as he did the white man; that he did not know of any colored man in the county, outside of school-teachers, that could read and write; that all the men he selected could read and write and were householders or housekeepers. Charles Bryant, another one of the jury commissioners, stated that he was a Republican, and that in selecting grand and petit jurors they selected such material as they thought was best; they made no discrimination against the colored man; that they did not consider the drawing or not drawing of colored persons in drawing jurors—just selected such men as they thought competent; that in selecting the jurors they would put a great many names in a box, and draw them out one by one; they put perhaps 400 in the box; did not think they selected any names with the word "col." written after them; that they omitted every name on the assessment roll where the word "col." was written after it; could not say that they

were omitted because they were colored; could not say they did not do
so; did not know how it happened; could not say that such fact influ-
enced them in leaving out their names or that it did not influence them.
In the selection of grand and petit jurors as jury commissioners he
tried to select the best men for the service, without reference to whether
they were white or black, and without regard to their nationality. Judge
Bliss, who presided when the jury commissioners were selected that
drew the list of grand and petit jurors who presented the indictment
in this case and who tried this defendant, stated, that during his in-
cumbency of about seven years and five months he had never known
a negro to serve on either grand or petit jury; that in selecting the
jury commissioners, the race question did occur to him as a possibility;
and that he selected Bryant as one of the jury commissioners, he being
a Republican. He further testified that the white men in the county
that are qualified as jury commissioners are a character of men that
would not select colored men to sit on a jury in the county; that he
charged the jury commissioners who drew the grand jury for the Jan-
uary term in reference to race prejudice; that he gave them the charge
for the purpose of remedying anything of the kind so far as he could;
that he could not see any other way. This same judge, as shown by
defendant's bill of exceptions number 2, if he had been permitted by
the court, would have further testified as follows. That he would
not have selected a jury commissioner whom he believed would draw
negroes on the grand or petit jury, not because he had a desire to
discriminate against the negro race, but that the conditions existing
in Grayson County are such that he believed it would have been a
hindrance to the colored race themselves; that to mix the races on
juries under conditions existing would be doing harm to the colored
race; that he believed there was prejudice existing in the county among
white people against the colored people and race; and that he thought
it would create a conflict among the two races; that when he selected
the jury commissioners he drew the grand and petit juries in this case;
he did so because he desired to avoid a race conflict; that he did not
believe that the white people of Grayson County would support any
man for district judge or sheriff they thought would be in favor of
having colored people serve on juries. We believe this testimony was
competent and should not have been excluded, as it goes directly to show
the motive that actuated the judge in appointing the jury commissioners.
The investigation was before the judge, and we understand the decisions
of the Supreme Court of the United States authorize the widest latitude
in the investigation of a question of this character. And taking this
testimony, in connection with that before shown, as also that of other
witnesses both for the State and the defendant, it is evident to our minds
that in the appointment of the jury commissioners who prepared the
lists from which the grand and petit juries were formed, discrimina-
tion was shown against the colored race; that is, such as the Supreme
Court of the United States would hold to be a discrimination, and a

denial to appellant of the equal protection of the laws. We further hold that the jury commissioners so appointed could hardly be expected to perform their duties without discrimination, and with absolute impartiality. Concede, however, that a tribunal so constructed might prove equal to the responsibilities thus cast upon them, still we believe that a perusal of their testimony shows that their conduct would be regarded by the Supreme Court of the United States as discriminatory against appellant as a member of the colored race in drawing the list of grand jurors who presented the indictment, and from which the petit jury was made up that tried him. See Carter v. State, 39 Texas Crim. Rep., 345; Carter v. State, 20 Sup. Ct., 687; Smith v. State, 42 Texas Crim. Rep., 220.

We pretermit a discussion of other questions, but for the error of the court in refusing to quash the indictment, the judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*

[The State's motion for a rehearing was overruled without a written opinion.—Reporter.]