RICHARD S. McMURRIN V. STATE

No. 25160. March 14, 1951.
Rehearing Denied June 6, 1951.
Order of the Supreme Court of the United States Denying Petition for
Writ of Certiorari filed November 12, 1951.

Hon. Donald M. Markle, Judge Presiding.

*Thomas H. Dent,* Galveston, for appellant.

*Raymond E. Magee,* County Attorney, Galveston, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This is a case of rape by force, with punishment assessed at death.

In the light of the questions presented for review, a statement of the facts is not deemed called for further than to say they are ample and sufficient to support the jury's verdict.

As we understand appellant's contention, it is that a reversal of the case should result because of a denial of due process, as guaranteed by both the Federal and State Constitutions, in two particulars, because (a) members of the Negro race, to which appellant belongs, were discriminated against, by reason of their race, in the organization of the jury commission that selected the grand jury venire from which the grand jury finding and returning the instant indictment against appellant was impaneled, and (b) the action of the prosecuting attorney in excusing from jury service, by the exercise of peremptory challenges, members of the Negro race, drawn upon the venire from which the jury trying appellant was selected, constitutes a denial to the appellant of the right to have members of his race upon the jury trying him and therefore a denial of due process.

By Art. 333, C. C. P., as amended, provision is made whereby the district judge appoints not less than three nor more than five persons having certain required qualifications as jury commissioners. It is the duty of the jury commissioners to select names of sixteen men from whom a grand jury is to be impaneled. Art. 338, C. C. P.

These articles are a part of the statute law of this state governing the organization of grand juries, which the Supreme Court of the United States ruled are not in themselves unfair and are capable of being carried out without racial discrimination. Smith v. State, 61 S. Ct. 164, 311 U. S. 128, 85 L. Ed. 84.

Appellant does not contend and the record does not suggest that the district judge in the selection of the instant jury commission purposely, intentionally, and arbitrarily excluded members of the Negro race therefrom, but, rather, relies for proof of discrimination upon the long continued and uninterrupted failure of district judges in Galveston County to call members of the Negro race for service as grand jury commissioners. No

member of the Negro race has ever served as a grand jury commissioner in Galveston County.

We are here dealing with the contention that due process of law has been denied to this appellant. No phraseology has been found to adequately define that term. For instant purposes, we know of no better definition than that found in Lisenba v. California, 314 U. S. 219-243, 62 S. Ct. 280, 86 L. Ed. 166-183, where it is said that, as applied to a criminal trial, "denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." Enlarging upon that definition, it is there further stated, viz.: "In order to declare a denial of it (due process) we must find that the absence of that fairness fatally infected the trial; the acts complained of must be such quality as necessarily prevent a fair trial." (Parentheses, supplied.)

It is apparent, therefore, that denial of due process must enter into and become a part of the trial and ultimate conviction, and unless it does so there has been no denial of the constitutional guarantee of due process.

With this thought in mind, attention is called to the limited power of the grand jury commission, which is to select the names of sixteen men from whom the grand jury of twelve is to be subsequently selected.

It is the grand jury that returns the indictment upon which the trial and conviction rests. So if the indictment be invalid, such must be because of the organization of the grand jury that returned it. If there be no discrimination practiced in the organization of the grand jury or any other irregularity shown, then no denial of due process has been shown.

Here, appellant makes no attack on the grand jury that returned the indictment. He does not insist that he, nor any member of his race, was discriminated against in the selection thereof. In fact, the record reflects that two members of the grand jury were members of the Negro race. So, appellant's position rests alone upon the proposition that the selection of the jury commissioners constituted a denial of due process.

From what has been said, it is apparent that if there was discrimination practiced by the jury commissioners in the selec-

tion of the grand jury panel, such discrimination did not find its way into and infect the grand jury that returned the indictment in this case upon which the conviction rests, nor did it otherwise find its way into the trial or conviction.

We are unable to bring ourselves to the conclusion that appellant has shown a denial of due process in the particular discussed. As supporting the conclusion expressed, see Ross v. State, (Page 164, this volume), 233 S. W. 2d 126.

We pass now to a discussion of the second question, which is that the action of the prosecuting attorney in excusing, by the exercise of peremptory challenges, members of the Negro race constituted a denial of due process.

Art. 615, C. C. P., provides that in capital cases both the state and the defendant shall be entitled to fifteen peremptory challenges. A peremptory challenge is made without assigning any reason therefor. Art. 614, C. C. P.

The record reflects that, of the two hundred names drawn upon the special venire from which the jury in this case was to be selected, eighteen were members of the Negro race.

In the selection of the jury the state excused, by peremptory challenge, six members of the Negro race and two members of the white race. The appellant exercised his full fifteen peremptory challenges and, in doing so, challenged no member of the Negro race. As to the disposition made of the other members of the Negro race, the record does not reflect further than that they were challenged for cause or disqualified for some reason. Two white members of the special venire remained on the venire list when the jury was finally completed. No member of the Negro race was a member of the jury that tried and convicted the appellant.

Members of the Negro race frequently serve upon the jury in the trial of non-capital or ordinary felony cases in Galveston County. No member of the Negro race appears to have served upon the jury trying a member of the Negro race for a capital offense in a contested case. Three Negroes served upon such a case, within the past year, where a plea of guilty had been entered by the accused.

Reduced to its final analysis, it is appellant's contention

that due process of law requires that he, and other members of the Negro race similarly situated, be accorded the right to have a member of their race upon the jury trying a Negro for a capital felony and that the laws of this state which authorize counsel for the state by the exercise of peremptory challenges to prevent members of the Negro race from so serving on such a jury violate the constitutional guarantee of due process. In other words, it appears to be contended by appellant that due process of law guarantees the accused the right to select members of the jury which is to try him for crime, rather than to limit his right to a rejection of those he believes to be partial or unfair.

In the early case of Hayes v. Missouri, 120 U. S. 68, the Supreme Court of the United States, relative to the power of the states to provide for peremptory challenges of prospective jurors, said:

"But to prescribe whatever will tend to secure the impartiality of jurors in criminal cases is not only within the competency of the legislature, but is among its highest duties. It is to be remembered that such impartiality requires not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held.

"Experience has shown that one of the most effective means to free the jury-box from men unfit to be there is the exercise of the peremptory challenge. The public prosecutor may have the strongest reasons to distrust the character of a juror offered, * * * and yet find it difficult to formulate and sustain a legal objection to him. In such cases, the peremptory challenge is a protection against his being accepted."

Further, in that opinion, the court announces the rule that so long as the accused is tried by an impartial jury he cannot complain or demand more, for "The right to challenge is the right to reject, not to select a juror."

In Brown v. New Jersey, 175 U. S. 172, the Supreme Court of the United States, in construing a statute of the State of New Jersey regulating the selection of juries, said: "In providing for a trial by a struck jury, impaneled in accordance with the provisions of the New Jersey statute, no fundamental right of the defendant is trespassed upon. The manner of selection is one calculated to secure an impartial jury, and the pur-

pose of criminal procedure is not to enable the defendant to select jurors, but to secure an impartial jury. 'The accused cannot complain if he is still tried by an impartial jury.' "

These holdings of the United States Supreme Court have not, to our knowledge, been overruled but consistently followed. They appear to be here controlling.

In the instant case, appellant makes no contention that the jury, or any member thereof, that tried him was partial or biased against him.

The law provides a means and method by which one accused of crime may test the prospective jurors, especially as to their bias or partiality, and challenges for cause such jurors as are found to be so biased or partial.

The state and an accused, each, have the right, in capital cases, to reject fifteen prospective jurors for any reason which to them seems proper. Such right does not carry with it the right to select jurors. So long as the accused has been tried by an impartial jury, his constitutional right of due process in that particular has been accorded him.

We are constrained to overrule appellant's contention.

We have examined the other bills of exception, and these are overruled without discussion.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING

GRAVES, Presiding Judge.

In his motion for a rehearing appellant cites us to the case of Herman Lee Ross v. State, (Page 164 of this volume) 233 S.W. (2d) 126, as decisive of the present case. That case was appealed on the proposition that Ross had been discriminated against in the selection of grand jurors for many years prior to the time of his trial. This matter went to the Supreme Court of the United States on a writ of certiorari and is their Cause No. 600, and is reported in U. S. Sup. Ct., 95 Law Edition Advance Opinions No. 12, dated May 21, 1951, page 662.

It is noted that the Ross case was reversed by virtue of Cassell v. Texas, 154 Tex. Cr. R. 648, 339 U. S. 282, 94 L.Ed. 839, 70 S.Ct. 629.

It is also noted that in the present case, as shown in our original opinion, there were two persons of the Negro race on the grand jury which indicted McMurrin, and in the original submission and argument of the case before our court no attack was made on the grand jury. The sole proposition at that time in this case related to the fact that the state's attorneys had challenged peremptorily each Negro presented to them and that, therefore, there was no Negro upon the jury which tried the appellant. As adverted to in our original opinion, the right to challenge peremptorily is the right to reject a juror and not to select one. The accused has no right to select the jury before whom he shall be tried, but he does have the right to reject any juror presented up to the number of peremptory challenges allowed by law. We find no complaint made by the appellant of the unfairness of the jury which tried him. It appears to us that he is only attempting to say to the state what jurors shall be peremptorily challenged. We think this matter has been properly disposed of in the original opinion to which we still adhere.

The motion for rehearing is overruled.