## JOHNNY LEE MORRIS V. STATE.

No. 25,892.  June 11, 1952.
Rehearing Denied October 15, 1952.
Writ of Certiorari Denied by the Supreme Court of
the United States May 4, 1953.

W. J. Durham, Dallas, Thomas H. Dent, Galveston, and Henry E. Doyle, Houston, for appellant.

Sam W. Davis, Criminal District Attorney, King C. Haynie, Assistant Criminal District Attorney, both of Houston, and George P. Blackburn, State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, life.

By all the witnesses, it was established that the homicide

occurred inside, and at the front end of, a city of Houston bus, while taking on passengers on Main Street at approximately 2:30 p. m. on October 11, 1951. The appellant, a 23-year-old ex-convict, was a passenger; the deceased was the driver of the bus. The lethal weapon was a pocket knife with a blade 3 or 3½ inches long.

As appellant entered the bus, he had some words with a fellow passenger. Because of this controversy, the deceased tendered the appellant a transfer in lieu of the fare he had paid and suggested that he get off the bus and catch the next one, in order to avoid trouble that seemed to be pending. In reluctant compliance with this suggestion, appellant prepared to leave the bus; but, instead of getting off at the rear exit, as instructed by the deceased, he proceeded to leave by the front door, where other passengers were entering. It was at this juncture that the assault took place.

Appellant does not claim that deceased was armed in any way, but contends that deceased had kicked him; that they began to fight; and that he cut deceased in order to get free from him.

Appellant admitted having drawn his knife and opened the blade upon entering the bus because of the alleged abusive conduct toward him by the fellow passenger in question. A woman, who was entering the bus as appellant prepared to leave, was cut on the ear by appellant's knife as he drew back the same preparatory to cutting the deceased.

As is often the case, the testimony of the other occupants of the bus presented some conflict, the principal point of variance being which of the participants made the first assault. Some of the witnesses testified that the deceased did not touch the appellant; that appellant entered the bus with a drawn knife in his hand and conducted himself in such a manner as to evidence malice toward the world. Others testified that, when the appellant refused to leave the bus at the accustomed exit, the deceased kicked him and tried to force him to use the proper exit.

The court instructed the jury on the law of murder with and without malice, the requirement of a specific intent to kill, and on the law of self defense. They found against the appellant, and we find their verdict justified from the evidence.

We shall attempt to discuss appellant contentions in the order presented.

Bill of Exception No. 1 complains of the trial court's refusal to grant appellant's motion to quash the indictment on the sole ground that there had been a systematic exclusion of members of the colored race in the selection of grand jury commissioners in Harris County.

As authority for his contention, appellant cites us Smith v. State, 44 Tex. Cr. R. 90, 69 S. W. 151; Cassell v. Texas, 154 Tex. Cr. R. 648, 339 U. S. 282; and Norris v. Alabama, 294 U. S. 587. The Cassell and Norris cases are not authority, since they deal with discrimination in the selection of grand and petit juries. We are aware of no case from the Supreme Court of the United States holding that an indictment in a state court may be invalidated solely because racial discrimination, within the meaning of the 14th Amendment, had entered into the selection and organization of the jury commissioners.

There were three contentions raised in Ross v. State, 156 Tex. Cr. R. 164, 233 S.W. (2d) 126. One of them was the above. When this case reached the Supreme Court of the United States (Ross v. Texas, 341 U. S. 918), it was reversed with a memorandum opinion citing as authority Cassell v. Texas, 339 U. S. 282. In the Cassell case, the contention now before us was not raised. Therefore, it must follow that the Ross case was reversed on a point common to it and the Cassell case, and not on the above contention.

Appellant forcefully asserts that our opinion in Smith v. State, 44 Tex. Cr. R. 90, 69 S. W. 151, decided in June, 1902; would authorize a reversal of the case at bar. We shall proceed to discuss the record in this case as against the rule therein expressed. At the outset, we find a stipulation that, during the period from November, 1936, to November, 1951, four members of the colored race had served as jury commissioners in Harris County. It is also stipulated that the population of Harris County was 802,102, of which 22.4% were members of the colored race; that there were 130,046 poll taxes paid in the county by male and female members of both races; and that, during the last two years, there had been 15 members of the colored race on the grand juries in Harris County.

In the Smith case, the judge testified that he thought it detri-

mental to the public generally, and to the colored race, to appoint members thereof on juries; that, because of this belief, he would never have selected a jury commissioner who he believed would draw Negroes on the grand or petit jury; and that he had purposefully followed this policy in the case then at bar in order to avoid race conflict.

It was thereby shown that the jury commission so selected discriminated against members of the colored race in the selection of the grand jury. It was this ultimate discrimination in the selection of the grand jury which caused the reversal in the Smith case.

In the case at bar, the picture is quite different. It is not shown or contended that there was discrimination in the selection of grand jurors by the jury commissioners. We refer again to the stipulation that members of the colored race *had*, in fact, over a period of years served as jury commissioners.

Judge King testified concerning the appointment of jury commissioners as follows: that he "never had in mind to exclude any person"; "Kemp had been on the grand jury, and he was a good citizen, and the next time I had the (jury) commission I appointed him on the commission." and, further, that he never had "it in mind to give proportional representation to any particular race or to limit the proportional representation to any particular race."

Judge Williford testified that it had never been his purpose in the selection of grand jury commissioners to discriminate in favor of or against any race, and that he had appointed more than one member of the colored race to such a position.

Judge Winborn testified that, in selecting the one jury commission which he had selected, he did not have as his purpose to in any way discriminate against any particular race or in favor of any particular race.

We think the evidence here presented fails to support appellant's contention.

Bills of Exception Nos. 2 and 3 relate to the court's failure to grant appellant's first and second motions for continuance. The first motion was filed on December 11, before announcements, and the second on December 13, after the selection of

the jury had been completed. Both complained of the absence of the witness Laura Dell Dickson, who it is alleged would have testified that the bus driver and another were fighting this appellant and had knocked him down prior to the time the bus driver was cut.

We observe that the witness Malcomb Lewis, who did appear and testified for appellant on the trial, stated that the appellant did not pull his knife until after two men had jumped on him and that they were down on the floor for some time before the bus driver was cut. This, we feel, is substantially the same evidence.

The motion asserts that appellant first learned the name of the missing witness through his attorney on December 7, while he was in jail. The motion is sworn to by appellant alone. In White v. State, 135 Tex. Cr. R. 448, 120 S. W. (2d) 805, we held that, where the appellant was in jail, his knowledge of the diligence being exercised in his behalf was necessarily based upon hearsay and that the motion was insufficient, since it was not supported by the affidavit of someone who might reasonably have known the facts.

The amended motion for new trial is likewise sworn to by appellant alone, and we find no affidavit of the missing witness attached thereto, nor do we find an affidavit of one who was in a position to know why the same had not been secured before the motion was filed. The trial was had December 10, 1951, and the motion for new trial was sworn to some 50 days later, on January 30, 1952. The motion should have had the affidavit of the missing witness or a showing, under oath, from some other source that the witness would have actually testified to such facts.

No error is shown by these bills. Belrose v. State, 156 Tex. Cr. R. 322, 242 S. W. (2d) 378; and Hawkins v. State, 156 Tex. Cr. R. 122, 238 S. W. (2d) 779.

Bill of exception No. 4 complains that there had been a systematic discrimination in Harris County in the selection of petit jurors through the use of peremptory challenges by the prosecuting officers. This same contention has been decided adversely to appellant by this court in McMurrin v. State, 156 Tex. Cr. R. 434, 239 S. W. (2d) 632, and Ross v. State, 156 Tex. Cr. R. 164, 246 S. W. (2d) 884, in each of which cases

certiorari was refused by the Supreme Court of the United States (McMurrin v. Texas, 342 U. S. 874, and Ross v. Texas, 71 Supreme Court Reporter 742.

Bill of Exception No. 5 contains the entire testimony of the witness Maes and numerous objections thereto. By this, appellant seeks to raise the question of the sufficiency of the evidence to prove that deceased met his death as the result of an act of violence inflicted by appellant. We note that the witness had been a justice of the peace for seventeen years, during which time he had conducted several hundred inquests in cases where death had been inflicted by the use of a knife. The witness testified that, from that experience and his observation of the wounds of the body of the deceased within approximately an hour after the attack in question, he concluded that appellant had met his death as the result of a knife wound in the chest.

It will be further noted that the witness Grant, who knew the appellant, testified that, just before the assault, the deceased was in good health and that immediately after being cut by appellant he had fallen to the floor and lost consciousness.

The witness Vincent went to the deceased immediately after the attack and, in attempting to make him comfortable, noticed this his pulse and respiration were weakening quickly.

The witness Dickey, who went to deceased as he lay on the floor after the attack, testified that she opened his shirt and saw where he had been cut "right in the heart".

We find the corpus delicti to have been amply established.

Finding no reversible error, the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

WOODLEY, Judge.

We have again examined the record in the light of appellant's motion for rehearing and remain convinced that no reversible error is shown.

We observe that appellant was sentenced to serve a penitentiary term of "not less than 2 nor more than life." The sentence is reformed so as to read that Johnny Lee Morris shall

be confined in the penitentiary for not less than 2 years nor more than life.

Appellant's motion for rehearing is overruled.

Opinion approved by the Court.