TONY VILLAS GONZALES V. STATE

No. 27,498. March 30, 1955
Rehearing Denied (Without Written Opinion)
May 11, 1955

*C. C. Divine,* Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady,* Assistant District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is robbery; the punishment, 20 years.

F. W. Tucker, the night manager of a service station, testified that the appellant, whom he had never seen before, approached his place of employment on foot after midnight on the night in question and asked for a package of cigarettes, that as he turned to get the cigarettes the appellant took a pistol from under his sport shirt and demanded the money. Tucker stated that he gave the appellant approximately sixty dollars in cash and five packages of Camel cigarettes; that the appellant said, "Let's take a walk," and as they started out the door of the station the appellant looked back momentarily and that he, Tucker, saw his "chance to jump him" and "grabbed him and wrested the gun out of his hand." Tucker said that they scuffled over the gun, and when he finally got it the appellant was lying on the ground in front of the station, that he demanded the return of his money but the appellant refused and started to leave, that he shot the appellant and continued to shoot at him until he emptied the gun as the appellant ran away from the station and into an alley. Tucker stated that he picked up appellant's hat, billfold, pocket knife and three packages of Camel cigarettes where they had been scuffling and called the police, that when they arrived some ten minutes later he gave them a description of the appellant, told them that the appellant had been shot and the direction he had traveled in departing. Tucker stated that he identified the appellant later that night at the hospital.

Detectives Waycott and Rockwell of the Houston police testified that they proceeded to the service station on the night in question and got a man's description and direction of flight from

Tucker, that they found blood spots in the alley and followed them until the came upon the appellant lying on the ground in a very bloody condition, that they searched the appellant and recovered $62.05 and two packages of Camel cigarettes and called for an ambulance.

The wallet found at the scene of the scuffle was shown to contain several identification cards of the appellant and two pages out of the yellow section of a telephone book showing retail liquor stores.

The appellant, testifying in his own behalf, presented a most ingenious defense. He stated that he was a regular customer at the station where Tucker was employed, that on the night in question he had gone to the station and had gotten into a dice game with Tucker and had won all his money, that as he prepared to leave Tucker told him that it was company money which he had lost and demanded that the appellant give it back to him and that when he refused Tucker reached under his own shirt, got a pistol, that they fought over the gun and that Tucker shot him and continued to shoot him as he ran away.

Appellant's brother testified that he had never before seen the pistol which was introduced in evidence.

Officer Seale testified that he passed the service station ten or fifteen minutes before he received a report of the holdup and saw Tucker there alone.

Mr. Mayo, a private investigator employed by appellant, testified that it was impossible to see inside the station from where Officer Seale had testified he had passed.

The jury resolved the disputed issue of fact against the appellant, and we find the evidence sufficient to support the conviction.

We will now discuss the contentions raised in appellant's brief.

Bills of Exception Nos. 1 and 5 complain of the refusal of the court to grant his second motion for continuance based upon the absence of the witness Frank, whose surname is thought to be De Leon. It is not shown by the bill, or otherwise, that a subpoena was ever issued for the witness. The motion for new

trial was sworn to by the appellant alone. In Morris v. State, 158 Texas Cr. Rep. 516, 251 S.W. 2d 731, we said:

"The amended motion for new trial is likewise sworn to by appellant alone, and we find no affidavit of the missing witness attached thereto, nor do we find an affidavit of one who was in a position to know why the same had not been secured before the motion was filed. * * * * The motion should have had the affidavit of the missing witness or a showing, under oath, from some other source that the witness would have actually testified to such facts."

No error is reflected by the overruling of the motion.

Bill of Exception No. 2 complains of the overruling of a "challenge to the array of jurors." The motion alleged that the sheriff "unlawfully defied the dictates of justice and good conscience by summoning persons upon said jury who are not of Latin American descent and who are not of Mexican issue." No evidence was produced on the motion. The bill reflects that appellant's counsel asked the panel if any of them were of Latin American issue and received no answer.

Nothing is presented for review by such a bill. A showing of the racial composition of a particular jury does not by itself, standing alone, show racial discrimination.

Bill of Exception No. 3 complains of the admission in evidence of the fruits of the search of appellant's person at the time of his arrest. We can think of few better cases that would authorize a search of the person. The officers received a report that a felony had been committed, a description of the felon, and the direction in which he had fled. They followed blood stains to the body of the appellant and found him bleeding. They arrested him and searched his person. Such search was authorized by Article 325, V.A.C.C.P., and the holdings of this court in Constant v. State, 155 Texas Cr. Rep. 6, 229 S.W. 2d 791, and Munoz v. State, 155 Texas Cr. Rep. 223, 233 S.W. 2d 494.

Finding no reversible error, the judgment of the trial court is affirmed.