Joseph Jefferson **JOHNSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43694.

Court of Criminal Appeals of Texas.

May 19, 1971.

Rehearing Denied June 29, 1971.

Briscoe, Dally & Shaffer, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Ted Hirtz, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is burglary to commit theft as a second offender; the punishment twelve (12) years.

Appellant's first three grounds of error relate to jury separation. The case was submitted to the jury on the question of guilt or innocence and they were permitted to separate until the charge was read, and then they were sequestered until they returned a verdict of guilty. They were then permitted to separate until the charge on punishment was read and they were sequestered until they returned their verdict on punishment. It is the appellant's contention that once the case was submitted to the jury on the guilt or innocence phase of the trial, they should have remained sequestered until the final verdict on punishment.

 While Art. 37.07, Sec. 3(c) and Art. 35.23, Vernon's Ann.C.C.P. might be read so as to support appellant's contention, we have concluded that the logical interpretation of these statutes is that it is only after a charge has been given and before the jury renders a verdict under that charge that they must be sequestered. Once the jury has reached a decision under that charge, it is within the discretion of the trial court, subject to review by this Court, to allow the jury to separate until the charge on punishment is submitted to them. The defendant may always present evidence or otherwise show how he was harmed by this action; in the case at bar, appellant did not attempt to show that he was injured by the court's action. The burden no longer rests upon the State to show that nothing prejudicial occurred during the jury's separation. As separation is now authorized by the Legislature, the presumption of harm during such separation is no longer valid. Compare Palasota v. State, Tex.Cr.App., 460 S.W.2d 137. The cases collected at 12A Texas Digest, Criminal Law, and 13B Texas

Digest, Criminal Law, which were tried before the 1965 revision of the Code of Criminal Procedure are no longer authoritative. Cf. Romero v. State, Tex. Cr.App., 458 S.W.2d 464.

Appellant's next several grounds of error relate to the legality of the search. The affidavit for the search warrant reads as follows:

"BEFORE ME, the undersigned authority on this the 19th day of March, 1968, did personally appear J. W. Maddox, who, upon his oath does depose and say the following:

"My name is J. W. Maddox. I am 37 years of age and am employed as a detective in the Burglary and Theft division of the Houston Police Department. I have been a police officer for 15 years and have been assigned to the Burglary and Theft division for 7 years. During my experiences as a detective in the Burglary and Theft division of the Houston Police Department, I have personally received numerous anonymous telephone calls that I have found to be true as to the nature of their information.

"On the 19th day of March, 1968, at approximately two o'clock in the afternoon, I received such an anonymous telephone call. The caller was a woman. I asked her to identify herself but she would not do so. She told me if I wanted to recover the property taken from the Automatic Distributing Company to go to apartment 103 at the Memorial City Apartments, 872 Bettina Street in Houston, Texas. She said she had heard on television that a Houston linen truck had been used in the burglary at the Automatic Distributing Company and on Friday night she had observed a Houston linen truck at this address and said several men were unloading property and putting the property in apartment 103.

"At 2:30 in the afternoon of the same date Detective J. L. Baker and I went to

the Memorial City Apartments, 872 Bettina Street, Houston, Texas, apartment 103 and knocked on the door. When there was no answer at the door, I looked through a window because I had information that stolen property was in that apartment. Upon looking, I saw cartons of ammunition and other cartons that appeared to have guns in them. The word 'Winchester' was printed on the cartons that appeared to have guns in them. Detective Baker and I immediately proceeded to the Courthouse to obtain a search warrant. I know that Winchester rifles and ammunition was stolen in a burglary at Automatic Distributing Company at 5721 Harvey Wilson, Houston, Texas, on March 16, 1968.

/S/ J. W. Maddox
_____
J. W. Maddox"

■ Appellant contends that by looking into his window, the officers conducted an unconstitutional search. We have concluded that the proper test to be applied in this case, in order to determine whether such action constitutes a search as defined in the Fourth Amendment, is stated in Cohen v. Superior Court, 5 Cal.App.3d 429, 85 Cai. Rptr. 354 (1970), which involved a similar set of facts. See also, this writer's dissent in Giacona v. State, 372 S.W.2d 328, 334.

In deciding the Cohen case, the California court implicitly recognized the theory in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, that "* * * the Fourth Amendment protects people, not places." Therefore, the fact that the officers did not trespass upon appellant's property does not determine this issue.

In Cohen, supra, the officers went out onto a fire escape next to the appellant's apartment and looked into her window, where they observed the appellant seated at a table, with a plastic bag, containing what later proved to be marihuana, in front of her. In sending this case back to the trial court for a factual determination, the California court said:

"The prime issue to be decided in this case is whether looking through a window, situated as was the window in this case,—looking out on the platform of a fire escape located on the fourth floor of an apartment house—was such an unconstitutional violation of the occupants' right of privacy as to render inadmissible evidence secured as the ultimate result of the things seen in that observation."

In order to determine this issue, the trial court was bound to look into all the facts and circumstances of the search.

"Whether or not the occupants of apartment 402 could reasonably assume that they were free from uninvited inspection through the window opening onto the fire escape was a question of fact, turning (inter alia) on the customary use or nonuse of the fire escape platforms for purposes other than emergency escape from a fire, and on the extent of view into the apartment by a person using the escape ladders and not walking away from the escape route." Cohen, supra.

Although the facts regarding this looking into the window are not as fully developed as they might be, we are able to get a fair picture of what occurred. Appellant lived in apartment 103, on the ground floor of an apartment house which appeared to be built around a courtyard. Two or more officers went to the front door, knocked, and after receiving no answer, started to walk away. As they began to leave the apartment, they noticed a window which was just to the right of the door and they further noticed that the draperies on this window were parted, leaving a gap of approximately two inches. The officers looked through this opening, into what was apparently the living room, and saw the items mentioned in the search warrant.

Under this set of facts, we cannot say that appellants could "reasonably assume that they were free from uninvited inspection through the window" and we must hold that no search protected by the Fourth Amendment occurred.

Appellant next contends that several officers entered his apartment without a warrant and without probable cause. The officers' examining trial testimony, plus the trial testimony of the accomplice, a State's witness, shows that they effected entry by using the apartment superintendent's key at some time between 4:00 and 5:00 p. m. on March 19, 1968. The warrant was issued at 5:02 p. m. that day.

At the trial and at a pre-trial hearing, the officers testified that, after they observed the weapons and ammunition, one of their members left the scene, drew up the affidavit, secured a search warrant and then called his associates who had remained at the scene, informing them that the search warrant had been issued. According to this testimony, they then entered the apartment.

Our concern is with the discrepancy in this testimony as to the time of entry. If entry was made prior to the time of the issuance of the warrant, it would not necessarily be an illegal search. The record shows that officer Maddox had previously investigated the burglary and theft at the Automatic Distributing Company, and that he knew that 115 rifles, many of them Winchesters, and approximately 18,000 rounds of ammunition had been stolen in the burglary. It would appear that he discussed this and the other matters mentioned in the affidavit for search warrant with the other officers on the scene, and that they, therefore, had probable cause to enter. See Art. 18.22, V.A.C.C.P. (preventing the consequences of theft); Constant v. State, 155 Tex.Cr.R. 6, 229 S.W.2d 791; Gonzales v. State, 161 Tex.Cr.R. 488, 278 S.W.2d 167.

■ However, we need not decide whether the officers themselves had probable cause to enter the apartment, as the trial court, by his ruling, showed that he believed the search was made subsequent to the issuance of the warrant.

■ Appellant next contends that, because the officers entered his apartment before they actually had the search warrant in their possession, the search was illegal.[1] Perhaps, if appellant had been at home at the time the officers searched his apartment, he would have some reason to complain. However, no one was in the apartment at the time the officers entered. We find no merit in this contention.

■ In one of his grounds of error, appellant complains that the warrant itself is insufficient because it does not contain the statement that the magistrate found probable cause for its issuance as contained in the form for search warrant contained in Sec. 3259, Willson, Texas Criminal Forms (7th Ed., 1966). Unfortunately for appellant, the rule in this State is that both the search warrant and the affidavit are to be considered together. A magistrate is not authorized to issue a search warrant unless he has presented to him an affidavit which itself contains a sufficient statement of probable cause.[2]

In the often cited case of Coleman County Country Club, Inc. v. State, Tex.Civ.App., 236 S.W.2d 558, the Court said, "The fact that the magistrate issued the warrant evidences his belief in the truth of the facts stated."

United States ex rel. DeNegris v. Menser, 2 Cir., 360 F.2d 199, relied upon by appellant, is not here controlling because it was apparent in that case that the magistrate was relying upon the police officers' satisfaction as to probable cause and not his own.

---

1. Officer Maddox arrived shortly after they had entered the apartment, with search warrant in hand.

2. It should be noted that Footnote 1, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, says in part: "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention."

In Gaston v. State, Tex.Cr.App., 440 S.W. 2d 297, 302, we find the following:

"Our State Constitution provides that no search warrant shall issue 'without probable cause, supported by oath or affirmation.' Further, Article 18.01, V.A.C.C.P. provides '[n]o search warrant shall issue for any purpose in this State unless a sworn complaint therefor shall first be filed with the issuing magistrate setting forth sufficient facts to satisfy the magistrate that probable cause does in fact exist for its issuance.' "

■ Further, as shown by Rozner v. State, 109 Tex.Cr.R. 127, 3 S.W.2d 441 (1928), it has long been the law in this State that a magistrate must decide whether the affidavit states facts sufficient to amount to probable cause. Unless the magistrate himself determines that the affidavit shows probable cause and that the affiant is telling the truth, he may not issue the search warrant. By the issuance of the search warrant, the magistrate has impliedly found there was probable cause; otherwise, it is assumed that he would not have issued the search warrant. With or without a conclusionary finding of probable cause, this Court is not bound by the magistrate's finding.

■ Appellant also contends that the affidavit for the search warrant is insufficient because it does not recite sufficient facts to show that the informant was reliable. In Katz v. Peyton, 4 Cir., 334 F.2d 77, the court had before it a quite similar situation. There an unknown customer alerted the manager of a store who then placed the accused under surveillance and observed sufficient facts to authorize his arrest. There the court said, "Though the informant's identity remains unknown, the reliability of the report was made manifest before the police acted." Appellant's contention in this regard is overruled. See also Comment, Informer's Word as the Basis for Probable Cause in the Federal Courts, 53 Calif.L.Rev. 840, 842 (1965).

■ Appellant alleges that Officer Maddox lied in the affidavit for search warrant when he stated that the person in possession of apartment 103 was a person or persons unknown, because he knew that appellant was in possession of the apartment. We have been unable to find any showing in the record that Officer Maddox knew who lived in the apartment prior to obtaining the search warrant.

■ In another ground of error, appellant complains that there was a variance between the premises described in the search warrant and the premises actually searched. The warrant designates 872 Bettina Street. The proof shows that the apartment searched was located at 872 Bettina Court. Reliance is had upon Balch v. State, 134 Tex.Cr.R. 327, 115 S.W.2d 676. In Balch it was made apparent that the address designated in the warrant was a vacant lot. No such fact exists in this case. There is no showing that there were two streets named Bettina in Houston and, therefore, Balch, supra, is not controlling, Cf. McCormick v. State, 169 Tex.Cr.R. 53, 331 S.W.2d 307.

In his final ground of error, appellant contends that the evidence is insufficient to support the conviction. We will summarize the evidence. William Bogler testified that he was employed by National Linen Service as a delivery man. His place of employment was located next door to Automatic Distributing Company, a warehouse. According to Bogler's testimony, when he arrived at work at 6:45 a. m., March 16, 1968, he found that the locked gate was broken open and that one of the delivery trucks was missing from the yard behind the gate. There was a hole in the wall of the Automatic Distributing Company warehouse at that time.

James Mayer, an officer of the Automatic Distributing Company, testified that he had the care, custody and control of the warehouse on the 15th and 16th of March, 1968, and that he did not give anyone permission to break into the warehouse. He testified that the warehouse was broken into

on March 15, 1968, by breaking through the wall, which break left a hole approximately four feet by four feet in area. According to Mayer's testimony, a total of 115 rifles and shotguns and slightly less than 18,000 rounds of ammunition were taken at the time that the hole was made in the warehouse wall. Mayer gave detailed descriptions to Houston detectives of the packaging of the stolen items, which included some Winchester guns, and gave them a list of the stolen items.

Gloria Ellis, manager of the Memorial City Apartments, testified that appellant lived in apartment 103 of that complex on March 19, 1968, and that he had lived there for the month prior to that date.

Jimmy Wood testified that he, Glen Verden and appellant met at appellant's apartment on March 15, 1968. They drove in a Chevrolet to a place near the Automatic Distributing Company warehouse, and climbed over a fence into the parking lot of the National Linen Service. A hole was made in the wall of the Automatic Distributing Company warehouse by the three, whereupon, Verden and the appellant went inside the building and began to hand out guns and ammunition to Wood. The trio then broke into a linen truck in the lot next door, took the linens out of it, and loaded it with the stolen goods. They "straight-wired" the truck, drove it out through the gate—after they broke the lock off the gate—then closed the gate to the linen service parking lot. The burglars met again at appellant's apartment, where they unloaded the guns and ammunition and placed them in appellant's apartment.

Finally, it was shown that the officers searching appellant's apartment had a description of the stolen goods, seen through the aperture in the blinds and found in the apartment fitted that description.

The evidence is sufficient to support the conviction.

Finding no reversible error, the judgment is affirmed.

ODOM, J., not participating.