[Civ. No. 35688. Second Dist., Div. Four. Mar. 16, 1970.]

MARY BETH COHEN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent; THE PEOPLE, Real Party in Interest.

## COUNSEL

Harry E. Weiss for Petitioners.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**ALARCON, J. pro tem.**\*—Petitioners were charged with possession of marijuana for sale, in violation of section 11530.5 of the Health and Safety Code. They moved, pursuant to section 1538.5 of the Penal Code, to suppress certain evidence secured by the police under the circumstances hereinafter set forth. Their motion was denied, and they seek in this court a writ of mandate to require that the order of denial be vacated. For the reasons hereinafter set forth, we grant the writ with directions that they be afforded a new evidentiary hearing on their motion.

### FACTUAL BACKGROUND

In ruling on the motion to suppress, the trial judge considered the testimony taken at the preliminary hearing pursuant to stipulation of counsel.

Officer James Maloney testified that he received an anonymous telephone call at 11:15 p.m., on February 19, 1969. He was advised that a female Caucasian, about 20 years old with long blond hair, was engaged in prostitution at 3731 Leland, apartment 402. Along with Officers Scroggins and Turner, Officer Maloney went to the above address to investigate the informer's tip. Upon arrival the officers walked to the fourth floor of

---

\*Assigned by the Chairman of the Judicial Council.

the building. No activity was observed in the hallway. The police did not at this time knock on the door or identify themselves to anyone. A fire escape is located at the south end of the hallway next to apartment 402. The fire escape is made of metal and is attached to the outside of the building. To gain access to the metal fire escape it is necessary to pass through a doorway marked "Exit." Photographs of the fire escape, introduced into the record, indicates that the escape ladder could be reached by going directly through the exit door to the head of the descent ladder. Officer Maloney stepped out onto the fire escape (see photograph here reproduced [see p. 436, *infra*]) and stepped to his left two or three feet, which placed him in front of a window of apartment 402, through which he could observe the inside of that apartment. Looking through the window Officer Maloney observed one of the petitioners seated at a kitchen table. In front of her on the table was a clear plastic bag containing a green leafy substance which appeared to be marijuana. Another person was observed in the living room. Officer Maloney was joined on the fire escape by Officer Scroggins. Officer Scroggins also looked through the window and told Officer Maloney he believed the substance they saw in the apartment was marijuana. Officer Scroggins and Officer Turner went to the door of apartment 402 while Officer Maloney remained at the window. It was agreed that Officer Maloney would whistle if any of the occupants tried to destroy any of the evidence. Officer Maloney heard the words "police officers" at which time a man (later identified as Stephen Michael Cohen) entered the kitchen in a "fast movement." Officer Maloney whistled because he thought Mr. Cohen "was going to try and destroy the evidence that was on the table."

Officer Charles J. Turner testified that on February 19, 1969, he went to 3731 Leland, apartment 402, with Officer Maloney and Officer Scroggins. While Officer Maloney was on the outside fire escape, he and Officer Scroggins went to the door of apartment 402. Officer Scroggins knocked on the door of that apartment. The door was opened approximately two inches by Howard Dennis Barnes. The door had a chain lock. Each officer exhibited his badge, at which time Officer Turner stated, "We are police officers. Open the door. You are all under arrest for possession of marijuana." Mr. Barnes "just stood there" and looked to his left in the direction of the kitchen. Officer Turner heard footsteps from the living room towards the kitchen. At this time he also heard a whistle. Officer Turner again told Mr. Barnes to open the door. Mr. Barnes did not move. At this time the door was forced open. The apartment was searched. In a closet off the bathroom Officer Turner found a brown bag containing 12 plastic bags filled with a green leafy substance resembling marijuana.

The petitioners' motion to suppress all the evidence seized in the apartment was denied.

The trial court summarized its analysis of the evidence and the applicable law as follows: "THE COURT: I am familiar with the *Edwards* case. I think the issue resolves itself by whether or not the officer did commit a trespass in going out on the balcony. And from the testimony and the exhibits that are introduced it appears that this is an exit that is for the use of people in case of a fire: it is in connection with, apparently, a number of apartments that are on that same floor, as illustrated by G-3. The mere fact that the officers were in a position to be able to look in a window by going out on the balcony that led to the fire exit does not to me mean they have committed an outrageous trespass. Perhaps the old theory of people who live in glass houses shouldn't is the answer to this case. In any event, I think they had a right to walk out there in connection with an investigation, that that invasion, if it was a trespass, and I don't even think it was, was not an unreasonable one. . . . In any event, I still feel this was not an unconstitutional invasion and the officer had to take merely two or three steps apparently to get into a position in front of the window from the door leading out of the apartment building, and again I emphasize a place that was available for people who lived or visited this place to go if they wished to do so. As to the remaining problem of forcing entry, it appears to me this was reasonable in view of the signal that the officers had if it appeared that the evidence was going to be destroyed."

## PETITIONERS' CONTENTIONS

1. The evidence should have been suppressed as the product of an unreasonable search and seizure following a major trespass.

2. The evidence was inadmissible because the entry was made in violation of Penal Code section 844.

## I

Petitioners' contention that Penal Code section 844 was violated under these facts is without merit. The police literally complied with the requirements of section 844. The forcible opening of the door was made necessary by the failure of the person who answered the door to unlatch the chain and the suspicious movements of Mr. Cohen in the direction of the contraband.

## II

The prime issue to be decided in this case is whether looking through a window situated as was the window in this case—looking out on the platform of a fire escape located on the fourth floor of an apartment house—was such an unconstitutional violation of the occupants' right of privacy

as to render inadmissible evidence secured as the ultimate result of the things seen in that observation.

It is admitted that the officers were acting in the course of a legitimate police investigation, but that, since their "tip" was from an anonymous telephone call, they had no right to enter the apartment nor to arrest its occupants except on the basis of what they had seen through the window.

■ The trial court and counsel concerned themselves with evaluating whether a major or minor trespass was involved. The trial court resolved the problem by finding that there was no "outrageous" trespass. We have concluded that the trial court erred by applying the wrong test. The test to be applied in determining whether observation into a residence violates the Fourth Amendment is whether there has been an unreasonable invasion of the privacy of the occupants, not the extent of the trespass which was necessary to reach the observation point. ■ Whether a particular search involves an unconstitutional intrusion into the privacy of an individual is dependent upon the total facts and circumstances of the case.

■ The Fourth Amendment prohibits unreasonable searches and seizures not trespasses. (*People* v. *Terry,* 70 Cal.2d 410, 427 [77 Cal.Rptr. 460, 454 P.2d 36].) ■ Looking through a window which is adjacent to a common area available to the other tenants of an apartment building as well as to other persons admitted by such tenants, or the management, and having legitimate business upon the premises is not an unreasonable search or a violation of a person's privacy. (*People* v. *Berutko,* 71 Cal.2d 84, 91 [77 Cal.Rptr. 217, 453 P.2d 721].) ■ "When, as in the instant case, a person by his own action or neglect allows visual access to his residence by providing an aperture adjacent to a common area, he may not complain that police officers who were lawfully present in that area have utilized that aperture to detect the commission of crime within." (*People* v. *Berutko, supra,* 71 Cal.2d at pp. 93-94.)

In *Berutko* the police went to the defendant's apartment to investigate an informer's tip. An officer went to the front portion of the apartment and looked through the window.

In the instant matter the police made their observations from an outside fire escape which was available to tenants, guests, and other persons lawfully on the fourth floor in case of fire. It is a tenable argument that tenants whose apartments had windows on the outside wall four stories above the street could reasonably expect privacy from any observations from the fire

escape except during an emergency evacuation. In such a crisis, it is unlikely that anyone would pause to look into windows.

■ Whenever an individual may harbor a reasonable expectation of privacy he is entitled to be free from unreasonable governmental intrusion. (*People* v. *Edwards,* 71 Cal.2d 1096, 1103 [80 Cal.Rptr. 633, 458 P.2d 713].) ■ Whether or not the occupants of apartment 402 could reasonably assume that they were free from uninvited inspection through the window opening onto the fire escape was a question of fact, turning (inter alia) on the customary use or nonuse of the fire escape platforms for purposes other than emergency escape from a fire, and on the extent of view into the apartment by a person using the escape ladders and not walking away from the escape route. Because the trial court's attention was misdirected to the false issue of trespass vel non, the record is not clear on the evidentiary facts from which a finding on the true issue could be made, and clearly, the trial court did not purport to decide that issue.

Because the case law, stemming from *Edwards,* is still not completely settled, we think that the parties and the trial court should have an opportunity to litigate and to decide the motion to suppress on the true issue.

The alternative writ of mandate is discharged. Let a peremptory writ of mandate issue, directing the superior court to vacate its order denying petitioners' motion to suppress and setting that motion down for a new evidentiary hearing consistent with this opinion.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied April 6, 1970.

[Reproduction of photograph referred to on p. 432, *supra*.]