[Crim. No. 18797. Second Dist., Div. Two. June 3, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY ORAL COOPER, Defendant and Appellant.

1114

---

---

## Counsel

Richard S. Buckley, Public Defender, James L. McCormick, James B. Jennings and Harry W. Brainard, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Douglas B. Noble, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HERNDON, J.**—Appellant was convicted of possession of restricted and dangerous drugs in violation of Health and Safety Code section 11910 after the cause had been submitted to the trial court upon the transcript of the preliminary hearing. He appeals from the order granting him probation for three years upon the condition that he serve a jail term of six months. The order is deemed to be an appealable final judgment under Penal Code section 1237.

### Appellant's Contentions

To show the relevance of the evidence which we are about to summarize, we first indicate the nature of appellant's contentions which are as follows: (1) a police officer's observations made from a third floor fire escape of activities in appellant's bathroom constituted a violation of appellant's constitutionally protected right of privacy; (2) the information in the possession of the arresting officers did not provide probable cause for appellant's arrest; (3) the entry and search of appellant's apartment were not contemporaneous with a lawful arrest and therefore the entry was made in violation of Penal Code section 844.

Our review has led to the conclusion that appellant's contentions are mistaken and based upon misconceptions of the controlling law. We find ourselves in agreement with the trial court's findings that the actions of the arresting officers in this case were reasonable and lawful in all respects.

### Summary of the Evidence

This summary is substantially taken from appellant's opening brief which accurately conforms with the record. Shortly before 3 a.m. on August 30, 1969, Officer Purington of the Los Angeles Police Department and his fellow officer while on patrol duty received a report of a robbery that had just occurred at the southeast corner of Western and Exposition in Los Angeles. The report provided a description of one of the robbers. The officers proceeded immediately to the indicated location which was only a few blocks distant.

On arriving at the location Officer Purington talked to one Paul Glen, the victim of the robbery. Glen gave the officers a detailed description of one of the persons involved in the commission of the robbery and stated that the robber who had used a gun in committing the crime had run from the scene into an apartment house two blocks away at 1608 West 38th

Place. Officer Purington radioed a report including a description of one robber.

Very shortly thereafter Officers Duffy and Barnes arrived on the scene. Purington related to them the information he had received including the description of the robber as given by the victim. Officer Duffy talked to the robbery victim who again described the robber and repeated the statements he had made to Officer Purington. Duffy thereupon commented, "You know, I think I recognize the suspect." At the trial Duffy explained that he immediately suspected appellant because his appearance and physical characteristics were "strikingly similar" to those of the robber described by the victim and because he knew appellant lived in the apartment house into which, according to the victim, the robber had run. Duffy further explained that he had arrested appellant on three prior occasions, the last such arrest having been made only two days previously.

Following their discussion with the victim the four officers proceeded to the apartment building on 38th Place arriving there at 3 a.m. which was about 15 or 20 minutes after Officer Purington had first talked to the victim. As Officer Duffy knew, appellant's apartment was located on the third floor. According to agreed plan Officer Purington went to the rear of the building while the other officers went to the front door. Purington entered the building and, using an inside stairway, went to the third floor and walked down a hallway to a point adjacent to appellant's apartment where he found an open window which looked out upon a fire escape.

Officer Purington testified that by reason of the information given by the victim that the robber had used a gun, he went out on the fire escape where he could look through a window into appellant's apartment. His purpose, he said, was "to see if anybody had a gun and if they had any opportunity to use it I could warn the officers at the front."

From the vantage point of the fire escape and looking through a bathroom window Officer Purington observed appellant and two other persons, one of whom was rummaging through a brown paper bag. Appellant was "rubbing the inner portion of his left arm, the inner elbow." At the same moment Officer Purington heard Officer Duffy knock at the front door and announce his presence including the statement "Police officers." Appellant immediately rolled down his sleeve and put on his coat and the other man put the paper bag in the commode and flushed it.

On the basis of his police training and experience Officer Purington concluded that appellant had either just injected or was about to inject a narcotic or dangerous drug and that the other individual was disposing of narcotics by flushing them down the drain. Purington immediately went

to the front door and told Officer Duffy that he believed evidence was being destroyed. Upon receiving this report from Purington, Officer Duffy again knocked on the door. After waiting 20 or 30 seconds and receiving no response, the officers forcibly opened the apartment door and entered. Officer Purington walked toward the bathroom where he found the man with the paper bag still standing by the commode and flushing it with appellant standing nearby. Officer Purington pushed the man away, raised the lid of the commode and removed a bag containing approximately 400 red capsules and 20 white double-scored tablets. He concluded that these were dangerous drugs. He placed appellant and the other occupants present under arrest.

Officer Duffy testified that upon arriving at the front door of appellant's apartment, he knocked and announced, "Police officer. I want to talk to Tony." From the inside a female voice responded, "Wait a minute." At this juncture Officer Purington came around and said, "Cooper is in the bathroom. He is fixing. They are dumping narcotics."

Purington then returned to the rear window and Officer Duffy knocked on the door again, demanded admittance, stated that he was a police officer and that "either open the door or we are going to have to force it." There was no response to this demand. As Duffy testified: "I could hear movement inside the apartment but no one answered the door. At this time Officer Purington again came around and we forced the door open." Asked why the door was forced open, the officer replied, "Because it was my understanding that the residents of the apartment or people inside were destroying evidence."

It was stipulated that an expert forensic chemist had examined the items seized by Officer Purington and found that the 400 capsules contained secobarbital and that the 20 white tablets contained amphetamine.

*Officer Purington's Observations From The Fire Escape Constituted No Unreasonable Invasion of Appellant's Privacy.*

It is unquestionable, of course, that the officers in this case were duty bound to investigate the reported robbery which had occurred only a few minutes before the report was received. The victim had told them that one of the robbers was armed and had run into an apartment house at 1608 West 38th Place, two blocks distant. The victim gave the officers a description of this man which precisely matched that of appellant Tony Cooper who, as Officer Duffy was aware, resided at 1608 West 38th Place. Duffy had arrested appellant for robbery only two days previously. Under these circumstances it is clear that the officers had good and sufficient

cause to suspect that appellant was the armed robber and to arrest him. In other words, this combination of facts and circumstances was more than sufficient to "lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that [appellant was] guilty of a crime." (*People* v. *Terry,* 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961].)

The facts here largely parallel those in *Maryland Penitentiary* v. *Hayden,* 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642], where, in upholding the arrest and search there in question, the court declared that the circumstances and exigencies made that course imperative. "The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape." (387 U.S. at pp. 298-299 [18 L.Ed.2d at p. 787].)

In view of the robbery victim's report that one of the robbers was armed, the reasonableness of Officer Purington's apprehension of serious danger to himself and his fellow officers is self-evident. It follows that the officer's utilization of the fire escape was equally reasonable. That is to say, in the circumstances of this case the procedure followed by the officers constituted no unreasonable invasion of appellant's right to privacy. The trier of the facts so found with abundant evidentiary support.

In *People* v. *King,* 234 Cal.App.2d 423 [44 Cal.Rptr. 500], police officers went to the vicinity of defendant's residence in response to complaints on the part of neighbors that he "was keeping late hours and had an odd assortment of company." (P. 426.) Upon arrival the officers observed a known narcotics offender emerging from the defendant's residence; he was apprehended and searched, but the officers found no narcotics, although they noticed an odor of marijuana about his person. Thereupon the officers entered defendant's front yard which was enclosed by a low fence, and proceeded to the front porch. Adjacent to the front door was a window. The blind was drawn but there was an opening of approximately 1½ to 2 inches in width. Stooping down to peer through the opening an officer looked inside the residence and saw an individual

rolling a marijuana cigarette. After a forced entry the officers arrested the defendant and seized a quantity of marijuana.

As the Supreme Court observed in *People* v. *Berutko,* 71 Cal.2d 84, 91-92 [77 Cal.Rptr. 217, 453 P.2d 721], after reciting the factual situation in *King,* "On appeal it was held that the officer's observation through the defendant's window constituted neither an unlawful search nor an unreasonable violation of his privacy." After further discussion of *King* and other decisions, the Supreme Court in *People* v. *Berutko, supra,* at page 93, stated as follows:

"In the course of its opinion in *King* the court quoted with approval the following language from *State* v. *Smith* (1962) 37 N.J. 481 [181 A.2d 761], cert. denied 374 U.S. 835 [10 L.Ed. 2d 1055, 83 S.Ct. 1879]: 'Peering through a window or a crack in a door or a keyhole is not, in the abstract, genteel behavior, but the Fourth Amendment does not protect against all conduct unworthy of a good neighbor. Even surveillance of a house to see who enters and leaves is something less than good manners would permit. But it is the duty of a policeman to investigate, and *we cannot say that in striking a balance between the rights of the individual and the needs of law enforcement, the Fourth Amendment itself draws the blinds the occupant could have drawn but did not.'* (Italics added.) (37 N.J. at p. 496.) (234 Cal.App.2d at p. 431.)

"We are persuaded that the *King* case properly states the law applicable to the instant case, and that here, as in *King,* the officer's observation through the aperture provided by defendant's arrangement of the window covering constituted neither an unreasonable search nor an unreasonable invasion of defendant's privacy. 'There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' (*Go-Bart Importing Co.* v. *United States* (1931) 282 U.S. 344, 357 [75 L.Ed. 374, 382, 51 S.Ct. 153]; see *Bielicki* v. *Superior Court, supra,* 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288].) Essential to the determination of reasonableness in cases wherein officers obtain probable cause for arrest through their own observations is a consideration of the degree of privacy which a defendant may reasonably expect in a given enclosure occupied by him, whether or not that enclosure be his residence. (*Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 581, 88 S.Ct. 507]; *Polk* v. *United States* (9th Cir. 1961) 291 F.2d 230, 232; *People* v. *Willard, supra,* 238 Cal.App.2d 292, 307 [47 Cal.Rptr. 734].)"

██ In all of the recent decisions dealing with the issue here under discussion it has been made clear that the test to be applied in determining whether or not a reasonable expectation of privacy has been violated by

governmental intrusion is the simple, common sense test of *reasonableness.* (*People* v. *Edwards,* 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].) As the same decisions indicate, the determinative issue generally is an issue of fact "to be decided in each case on its own facts and circumstances." (*Kirby* v. *Superior Court,* 8 Cal.App.3d 591, 595 [87 Cal.Rptr. 577]; *Vickery* v. *Superior Court,* 10 Cal.App.3d 110, 116 et seq. [88 Cal. Rptr. 834].)

Appellant's reliance upon *Cohen* v. *Superior Court,* 5 Cal.App.3d 429 [85 Cal.Rptr. 354], is misplaced. Indeed, a proper application of the reasoning and the law enunciated in *Cohen* leads to a conclusion adverse to appellant's contention. In *Cohen* the police went to the defendant's residence to investigate reports of alleged prostitution. There was no indication that any suspect was armed or that the officers apprehended any danger of violence. Hence the only apparent reason for using the fire escape in order to obtain a view of the interior of the residence was to obtain evidence of prostitution. The substantial differences in the factual context of the *Cohen* decision are of obvious legal significance.

However, it bears emphasis that in *Cohen* it was not held as a matter of law that the police observations from the fire escape necessarily constituted "an unreasonable invasion of the privacy of the occupants." Rather the court held only that there was a "tenable argument" on the basis of the evidence in that case that there had been such an invasion and that this arguable issue was one of *fact* to be decided by the trial court on remand.

*The Observed Conduct of Appellant and His Companions Provided the Officers With Probable Cause to Arrest Appellant for Possession of Narcotics or Dangerous Drugs.*

■ As we have observed, the officers proceeded to the apartment in which appellant was known to reside with knowledge of facts and circumstances more than sufficient to constitute probable cause for his arrest as a robbery suspect. In addition, when the officers made their entry into appellant's apartment they had probable cause to arrest him on the basis of their justifiable belief that he was a possessor of narcotics. (*People* v. *Terry, supra,* 2 Cal.3d 362, 393.) ■ In determining this issue the trial court may take into account the arresting officer's expertise in matters of drug detection. (*People* v. *Towner,* 259 Cal.App.2d 682, 683-685 [66 Cal.Rptr. 559]; *People* v. *Farmer,* 267 Cal.App.2d 500 [73 Cal.Rptr. 193].)

*People* v. *Hart,* 177 Cal.App.2d 484 [2 Cal.Rptr. 226], presented a factual situation very similar to that of the case at bench. In that case the police went to an apartment to investigate a robbery. Prior to arriving

they had no indication of narcotic activities at that location. When they arrived outside and the defendant saw them, he stood up, put his hand in his pocket and dropped something on the floor. He then called out toward the apartment, "Watch it, Fred. Fred, watch it." (P. 485.) It was held that probable cause to arrest the defendant for possession of narcotics existed when the object was dropped.

*The Officers Entered Appellant's Apartment After Substantial Compliance With Penal Code Section 844; Strict Compliance Was Not Required Because Of The Exigent Circumstances.*

■ Appellant's untenable contention that the officers entered his apartment illegally merits nothing more than summary rejection in view of the controlling precedents. In the circumstances of this case, as in *People v. Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116], the officers "substantially complied with section 844 by knocking, requesting admittance, and identifying themselves as [police] officers." In view of their observed activities with their generous supply of narcotics, appellant and his companions certainly could not have been unaware of the probable purpose of the officers. (Cf. *Duke v. Superior Court,* 1 Cal.3d 314, 320 [82 Cal.Rptr. 348, 461 P.2d 628], and decisions cited.) ■ It is well settled, of course, that strict compliance with section 844 is excused "when officers prior to entry are able to detect activity from within which leads them to reasonably conclude that the occupants are then engaged in the destruction or concealment of evidence." (*People v. De Santiago,* 71 Cal.2d 18, 29 [76 Cal.Rptr. 809, 453 P.2d 353].)

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.