[Crim. No. 4602. Fourth Dist., Div. One. Nov. 10, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
DEBORAH LORRAINE CAGLE, Defendant and Respondent.

**COUNSEL**

Cecil Hicks, District Atorney, Michael R. Capizzi and Oretta D. Sears, Deputy District Attorneys, for Plaintiff and Appellant.

Philip Daigneault, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**AULT, J.**—Defendant Deborah Lorraine Cagle was charged in an information with possession of marijuana (Health & Saf. Code, § 11530). She entered a plea of not guilty and moved to set aside the information under Penal Code section 995 and to suppress evidence under Penal Code section 1538.5. The motions were argued and decided at a superior court hearing on December 31, 1970. The court denied the motion to set aside the information, granted the motion to suppress evidence and ordered the case dismissed pursuant to Penal Code section 1385. The People appeal as permitted by Penal Code section 1238, subdivision (7).

The record before us is a sloppy one from beginning to end. Reference to the superior court file has failed to clarify it. On appeal, both parties assume the motion to suppress was heard and determined in the superior court on the testimony of one witness, called by the defendant, and the transcript of the testimony taken at the preliminary hearing. The assumption is not supported by the record.

■ A motion to suppress evidence is a de novo hearing in the superior court. (Pen. Code, § 1538.5, subd. (i).) The transcript of the testimony taken at the preliminary examination is not ipso facto admissible at the superior court hearing. Absent a stipulation, neither the People nor the defendant can present the testimony taken at the preliminary examination at the superior court hearing unless the provisions of Evidence Code section 1291 governing use of former testimony are met. (*Hewitt* v. *Superior Court*, 5 Cal.App.3d 923, 927-928 [85 Cal.Rptr. 493].) ■ To have validity, an oral stipulation permitting the use of the preliminary transcript for the purpose of the superior court hearing should be entered in the court's minutes, or at least should be reflected in the transcript of the proceeding. (*Thompson* v. *Superior Court*, 262 Cal.App.2d 98, 105 [68 Cal.Rptr. 530].) Here, neither the minutes nor the transcript of the proceeding show such a stipulation was made. Furthermore, where such a stipulation is made, the record should positively reflect the superior court judge who ruled on the motion has read and considered the preliminary transcript. The de novo hearing requirements of Penal Code section 1538.5 are not met if the superior court judge merely listens to argument of counsel which makes random reference to the preliminary transcript. It is a simple thing for the judge who has read and considered a preliminary transcript pursuant to stipulation to state that fact for the record. Assuming the parties stipulated the judge who ruled on the motion could read and consider the preliminary transcript, the record in this case gives no positive indication he did so.

The transcript of the hearing and the points and authorities filed in support and in opposition to the motion in the superior court disclose both sides referred in argument to the evidence introduced in the municipal court. From this, inferences may arise the preliminary transcript was properly before the court and that the judge had access to and considered the transcript. (See *Amacher* v. *Superior Court,* 1 Cal.App.3d 150, 155 [81 Cal.Rptr. 558].) We do not believe the inferences are of such compelling force a reviewing court is required to draw them, and we emphatically conclude the possibility of their existence should not be relied on by trial courts or attorneys as a substitute for sound practice.

If we indulge in the assumptions alluded to in the preceding paragraph, we are met with still further inadequacies in the record. The motion to suppress evidence was made orally, no grounds were specified and the items of evidence sought to be suppressed were not identified in any manner. Other than to observe that Penal Code section 1538.5, subdivision (a) sets forth the grounds upon which a motion to suppress evidence may be made, and to comment that every motion should state the grounds upon which it is made (See *Thompson* v. *Superior Court, supra,* 262 Cal.App.2d 98, 103, fn. 3), as well as the records relied upon to support it, we pass over the fact the record here contains no statement of the grounds upon which the motion was made or granted.

We meet a higher hurdle, however, when we find the motion failed to specify the items of evidence sought to be suppressed. The record shows a motion under Penal Code section 1538.5 was made and granted. Nowhere are the items sought to be suppressed, or which were in fact suppressed, identified. (See *People* v. *Superior Court,* 10 Cal.App.3d 122, 126 [89 Cal.Rptr. 316]; *People* v. *Superior Court,* 274 Cal.App.2d 228, 232 [78 Cal.Rptr. 830].) Reference to the preliminary transcript compounds the confusion. While several items of contraband were seized at the time defendant was arrested, and some were discussed by witnesses who testified at the preliminary hearing, nothing we can find in the transcript indicates any items of contraband were marked for identification, or received in evidence. We are further confused by the fact the briefs of both parties state several items of contraband (without identifying them) were suppressed at the preliminary examination. While our copy of the transcript indicates the magistrate discharged the codefendant Jeffers at the preliminary hearing, it does not show a motion to suppress evidence was made by either defendant, or that any evidence was in fact suppressed. We conclude either both counsel are in error or we have been furnished an incorrect copy of the record.

Despite the deficiencies in the record before us, and the assumptions

we are required to make because of them, we have determined to decide the appeal on the merits. In so doing, we recite and consider the evidence introduced at both the municipal and superior court hearings in the light most favorable to the trial court's order, and under the well established rule our function is to determine whether substantial evidence supports it. (*People* v. *Superior Court,* 9 Cal.App.3d 203, 209 [88 Cal.Rptr. 21].)

On September 29, 1970, at about 9:30 p.m., Deputy Marshals Ringler and Bamford went to the 31800 block on Eighth Street in South Laguna Beach to arrest a John Stewart Christenson or a David Stewart Christenson pursuant to two misdemeanor arrest warrants (non-appearance, Veh. Code, § 40508). The warrants gave the address of the person to be arrested as 31818 Eighth Street. The officers went to the first house in the block on the right-hand side of the street. It was the wrong house and was in fact 31808 Eighth Street. Although the house numbers were plainly marked on the fascia board directly over the front porch entry, the officers testified they could not find any house numbers even though they shined their spotlight and flashlights around the house.[1]

Deputy Ringler went to the door of the house and his partner, Bamford, went to the side and rear to prevent anyone from leaving through a back door or window. Bamford, in fact, approached the rear bathroom, peered in the window and saw a hashish pipe on a chest directly below the window ledge. He also caught a glimpse of a human form in the bathroom-bedroom area. He testified he was unable to tell whether the form was male or female. Meanwhile, Ringler went to the door of the house and knocked. Jeffers, the codefendant who was discharged in the municipal court, came to the door. Ringler testified: "He stated that he wasn't the subject we were looking for, that he did not know anyone by the name of the subject on the warrant and that this was a friend of his house and the only name he knew was Chris. I asked if Chris was home and he stated no, he was home by himself. I asked him to produce identification. At this time, he left the position at the door where we were standing conversing, went back towards the rear of the house and then returned with identification stating that he was, in fact, Jeffers." The house was in fact rented by a Christopher Friend, who was not the subject of the warrant, but the officers did not know this at the time. Jeffers and Ringler left the house

---

[1]At the preliminary hearing a picture of the house was introduced and received in evidence. This clearly shows the house number, 31808, above the front entry. At the superior court hearing, the defendant called Mrs. Bischoff, who testified she had owned the house for approximately six years; the address of the house was 31808; the house numbers had always been on the house as depicted in the picture. She further testified the house was rented to a Christopher Friend at the time in question.

for a few minutes to inquire of a neghbor across the street concerning the person named in the warrant.[2] When they returned they went to a different door and talked for a while. Ringler looked through the kitchen window and observed the butts of three hand-rolled cigarettes in an ashtray on a table. Bamford returned to the front of the house and told Ringler he had seen someone in the bathroom-bedroom area. Ringler told Jeffers he was going to enter the house to find out who was hiding in the bathroom or bedroom. He testified the sole reason he entered the house was to serve the warrants and to ascertain whether the person seen through the bathroom window was the person named in the warrants. Jeffers protested the house didn't belong to him and stated he could not give permission to go in and look around. As he entered the living room, Ringler detected a faint smell of marijuana and saw the defendant Cagle come into the living room from the bedroom.

Although Ringler was satisfied the defendant was not the person named in the warrants, he asked for her identification. She said her purse was on the counter in the kitchen. Ringler went to the kitchen, took a look at the cigarette butts in the ashtray and then went to the kitchen counter. Here Ringler's testimony became confused. He first stated he saw a jar full of seeds and greenish-brown leafy material which resembled marijuana. The jar was lying in the defendant's purse which was on the kitchen counter next to a large brown paper bag. He later testified the jar was in the bag which was in the purse. Still later he testified both the jar and the purse were inside the brown paper bag, although he couldn't remember whether the jar was inside the purse or merely inside the paper bag. Whether the jar of marijuana was inside the purse beside the paper sack, inside the purse inside the sack, inside the sack inside the purse, or inside the sack beside the purse, Ringler stoutly maintained it was in plain view and that no search was involved. While he originally couldn't remember seeing anything else of significance in the purse, he later remembered he saw a plastic bag of marijuana. When his memory concerning the plastic bag of marijuana in the purse was jarred, Ringler recalled it too was in plain sight, as he stood in the kitchen.

Neither the defendant nor Jeffers was arrested at this time. Instead, Ringler called the Orange County sheriff's office. After a half hour or so

---

[2]In answer to his direct question, Ringler testified the neighbor told him her residence was number 31808. Either the information furnished or the testimony given was incorrect, but Ringler seems to have accepted it as true at the time. Query? If the house across the street carried the number 31808, did the officers have any reasonable basis to believe the house where they were attempting to serve the warrant bore the address given in the warrant, 31818? Ordinarily, even numbered addresses are all located on the same side of the street.

Deputy Sheriff Woodington arrived, advised the defendant and Jeffers of their constitutional rights, and summoned two narcotics investigators. Then he made a "cursory" search which, in addition to the items already mentioned, revealed a scale measured in grams inside a closet, and the defendant's identification in her purse. Although Ringler testified he replaced all items he examined exactly as he found them, Woodington stated he found the jar of marijuana on the kitchen counter inside a sack *next to* defendant's purse, the one alternative not encompassed by Ringler's various descriptions of its locale. Investigator Green made a thorough search of the house, uncovering in a closet another baggie of marijuana inside a zippered satchel belonging to Jeffers. Other paraphernalia such as roach clips and hashish pipes were found and seized. No search warrant was obtained.

Nothing in the record indicates Christenson, the subject of the two misdemeanor arrest warrants the officers originally sought to serve, was in any way connected with the house which was searched and in which the defendant was arrested. In the preliminary hearing the parties stipulated the jar of marijuana and the bag of marijuana found in defendant's purse contained a usable quantity of marijuana. They also stipulated the cigarette butts in the ashtray did not contain a usable quantity of marijuana.

While the trial judge stated no reasons for granting the motion to suppress, it is apparent from the record he did so because he believed the observations made by peering through the bathroom window were an unreasonable violation of the right of privacy, and because the search within the house exceeded the limits laid down in *Chimel.* The record supports the ruling on either basis.

After knocking, identifying themselves, explaining their purpose and demanding admittance, Penal Code section 844 permits peace officers to enter a house without consent to effect an arrest pursuant to a warrant if the person to be arrested is in the house or if the officers have *reasonable grounds* to believe him to be in the house. "Reasonable grounds," as used in the code section, is the equivalent of "reasonable cause" or "probable cause" as those terms are used in the constitutional and statutory provisions concerning the issuance of a search warrant, and arrest without a warrant, commitment by a magistrate and indictment by a grand jury. (*People* v. *Pease,* 242 Cal.App.2d 442, 445 [51 Cal.Rptr. 448].) Reasonable grounds to believe the person named in the warrant was in the house means such a state of fact as would lead a man of ordinary caution or prudence to believe, and to conscientiously entertain a strong suspicion the subject of the warrant was in the house. (*People* v. *Pease, supra,* 242 Cal.App.2d 442, 446.) Probable cause to arrest, to commit

or to indict may not be based upon illegally obtained evidence. ▇ We also believe the "reasonable ground" requirement of Penal Code section 844 may not be substantiated by information obtained in violation of an accused's constitutional rights. (*Wong Sun* v. *United States,* 371 U.S. 471, 484-486 [9 L.Ed.2d 441, 452-454, 83 S.Ct. 407, 415-416].)

▇ Here, the officers serving the warrants were not at the address furnished by the warrants. It is apparent they based their belief Christenson, the subject of the warrant, might be in the house on the information Bamford obtained by peering through the bathroom window. The bathroom was at the rear of the house, situated far from all normal access routes. The trial court could well conclude persons occupying the bathroom under the circumstances were entitled to "a reasonable expectation of privacy," and that Officer Bamford's action in taking a position at the window which enabled him not only to see the occupant, but also to observe a hashish pipe lying on a chest directly below the window ledge, was an unreasonable invasion of privacy in violation of Fourth Amendment rights. (See *People* v. *Edwards,* 71 Cal.2d 1096, 1104-1105 [80 Cal.Rptr. 633, 458 P.2d 713]; *Cohen* v. *Superior Court,* 5 Cal.App.3d 429, 434-435 [85 Cal. Rptr. 354].) Whether the occupant of the bathroom could reasonably assume she was free from uninvited inspection and whether Bamford's conduct constituted an unreasonable intrusion were essentially questions of fact. (*Cohen* v. *Superior Court, supra,* 5 Cal.App.3d 429, 435.)[3]

If, as we believe he did, the trial judge concluded Bamford's conduct constituted an unreasonable intrusion into the occupants' right of privacy, Bamford's observation could not be relied upon to establish reasonable grounds to believe the subject of the warrants was in the house. It follows the officers' entry into the house was illegal, the search which followed was an exploitation of the illegal entry and the "fruits" of the search were properly suppressed. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 295 [78 Cal.Rptr. 504, 455 P.2d 432].)

The trial court's order can also be supported because the search of the house violated the rules established in *Chimel.* Apparently the magistrate dismissed the complaint against Jeffers on this basis. The People attempt to

---

[3]Bamford's purpose in going to the house was to serve the two misdemeanor traffic warrants. Taking a position where he could observe persons who might attempt to leave the house through other doors or windows did not require him to peek into the bathroom window. The two-fold purpose of the requirements set forth in Penal Code section 844 is to protect the individual's right of privacy in his home, and to guard against harm to both the occupant and the police by discouraging confrontations conducive to violence. (*People* v. *Hill,* 19 Cal.App.3d 306, 318 [96 Cal.Rptr. 813]; *Greven* v. *Superior Court,* 71 Cal.2d 287, 292 [78 Cal.Rptr 504, 455 P.2d 432].) Condoning Bamford's conduct would defeat both of these purposes.

distinguish the jar of marijuana and the bag of marijuana found in defendant's purse from the other items seized in obvious violation of *Chimel* because the latter items were in "plain sight." In view of the extensive search made of the house without a warrant, the confusion and conflicts in Officer Ringler's testimony as to where he found these items, and the conflict between his testimony and Officer Woodington's on the same subject, the trial court was not obligated to accept the testimony the items were found in plain view. █ "Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted." (*Hicks* v. *Reis,* 21 Cal.2d 654, 659-660 [134 P.2d 788]; *Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 890 [92 Cal.Rptr. 162, 479 P.2d 362].)

█ While the record before us contains evidence which might support a contrary conclusion, we are satisfied it also supports the trial court's order. We are further convinced the ruling involved the fundamental fact-finding process, including weighing evidence, judging the credibility of witnesses and drawing inferences from the facts proved. No authority need be cited for the proposition these functions lie with the trial court and that this court may not interfere to substitute its own judgment if the trial court's order is reasonable and supported by substantial evidence.

The order is affirmed.

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.