STATE of Tennessee, Appellant,

v.

David D. BOWLING, Appellee.

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 21, 1993.

Charles W. Burson, Atty. Gen. and Reporter, Kathy M. Principe, Asst. Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen., James Walsh, Asst. Dist. Atty. Gen., Nashville, for appellant.

David E. High, Nashville, for appellee.

## OPINION

PEAY, Judge.

This case is an appeal by the State of Tennessee pursuant to T.R.A.P. 3(c)(1) from an order granting the defendant's motion to suppress certain evidence.

Essentially four questions are raised on appeal. First, whether Officer Poteete's actions of getting down on his hands and knees with his head very near to the ground, and looking into the garage violated the defendant's reasonable expectation of privacy, constituting a warrantless search in violation of the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution; second, whether the search warrant affidavit contained reckless misrepresentations of material facts; third, whether the search warrant affidavit, absent the information attained from the contested search, would be sufficient on its face to render probable cause; and fourth, whether the appeal in this case was timely filed and, therefore, should not be dismissed. Having reviewed these matters, we conclude that the appeal should not be dismissed, and we affirm the lower court's action.

To best analyze and understand the matters raised, we must first lay a factual foundation. On March 16, 1990, Officer Lloyd Poteete, a hit and run accident investigator for the Metropolitan Nashville Police Department, responded to a hit and run fatality on Murfreesboro Road in Nashville, Tennessee. The victim was walking on the shoulder of the road when she was struck from behind and killed by a vehicle which fled the scene. At the scene of the incident, several pieces of plastic and debris common to the type used on the front of vehicles and automobile grills were recovered. One of the recovered pieces was a Ford logo. A witness at the scene also indicated that the vehicle involved in the incident was a tan or light brown colored vehicle. After further investigation Officer Poteete ascertained that the recovered pieces were from the grill of a 1983 to 1986 Ford truck or Bronco.

Other than this information, there was little with which to proceed. However, on March 19, 1990, an anonymous individual telephoned the Nashville Police Department and stated that the defendant had been involved in the incident which had occurred on March 16, 1990. The informant added that the defendant had come home late at night driving a dark tan or brown Ford Bronco truck which had front end damage on it and that the truck was pulled behind a house on Springmont Drive. Officer Poteete followed up on this information, learning that the defendant had received a traffic ticket while driving the 1984 Ford truck and that the defendant's address was listed as 325 Overhill Drive in Old Hickory, Wilson County, Tennessee. Overhill Drive is located in a subdivision named "Springmont".

Pursuant to such information Officer Poteete, Metro Officer Ron Anderson, and Wil-

son County Deputy Ricky Knight proceeded to 325 Overhill Drive in the Springmont Subdivision. At this address they found a split-level house with a two car garage directly under the main living floor. A large driveway proceeded along the right side of the house and ended at two solid garage doors on this side of the house. Around the back of the home, a door with a window led into the garage. Also on the back of the house was a patio porch with another door which led into the house.

Upon arrival Officer Poteete knocked on the front door of the home while Officers Anderson and Knight went around to the back door. Officer Poteete continued to knock on the front door and received no response while Officer Knight knocked on the back door and also received no response. Officer Anderson, making his way back to the front of the house, stopped and knocked on the door leading into the garage. As Officer Anderson knocked, he glanced through the window in the door and noticed a brown Bronco truck on the far side of the garage. Although he could not see the front end of the truck, he could see that the hood was slightly buckled, which indicated to him that there might be some damage to the front of the Bronco.

Officer Poteete walked away from the front door and was making his way around the side of the house towards the back when Officer Anderson notified him that he had observed a brown-colored Bronco in the garage. For some reason, however, Officer Anderson did not mention to Officer Poteete that he had observed the hood's being slightly buckled. At this time the officers were standing in the driveway in front of the two solid garage doors. While the garage doors have no windows, the door closest to the back yard and farthest from the truck had been left open approximately one and a half feet allegedly for the purpose of allowing the dog to come and go from the garage. Officer Poteete then got down on his hands and knees with his head very near to the ground and looked into the garage. From this position, he was able to see that the Ford Bronco had sustained front end damage.

Subsequently, a search warrant was obtained based upon an affidavit, the pertinent parts of which include:

Affiant [Officer Poteete] is an officer of the Metropolitan Nashville, Tennessee, Police Department, and is currently assigned to the Traffic Division as a Hit & Run investigator. ... On Friday, March 16, 1990, affiant responded to the scene of a fatal hit and run accident which occurred at 1132 Murfreesboro Road, in Nashville, Davidson County, Tennessee, at approximately 1:30 A.M. ... On Monday, March 19, 1990, Officer Earl Watson of the Metropolitan Nashville Police Department, received an anonymous telephone call advising him of the location of a vehicle possibly involved in the fatal accident. From information received, Officer Watson advised affiant that a "David Bowling" had returned to his residence, located on *"Springmont,"* at approximately 2:00 a.m. on the morning of the accident, and parked his vehicle, described as being possibly a brown Ford Bronco, in the *garage* of the residence, where it had not been moved again since that time. Further, the caller indicated that the vehicle appeared to have sustained damage to the grill area. Through his investigation, affiant determined that a "Springmont" street was located in the Springmont subdivision of Old Hickory, Wilson County Tennessee. After responding to the area with officers of the Wilson County Sheriff's Department, affiant received additional information from Officer Watson that a subject name "David Bowling" ... had *received* a parking ticket on a 1984 Ford truck ... on March 16, 1990 Affiant responded to that location, and while attempting to locate any one living at said residence, observed a brown Ford truck backed into a bay of the house's garage. (emphasis added)

 While examining the first issue concerning Officer Poteete's action in looking into the defendant's garage, we note that the Constitution of the State of Tennessee guarantees "[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures ...". Tenn. Const. Art. I, § 7. This same guarantee is embodied in the Fourth

Amendment of the United States Constitution. The touchstone of unreasonable search and seizure analysis is "whether a person has a 'constitutionally protected reasonable expectation of privacy'". *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986); *see Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

Through *Katz* and its progeny, the United States Supreme Court has pronounced a two-part inquiry in determining an individual's constitutionally protected reasonable expectation of privacy. First, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable? *Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Katz,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576. Such analysis has been applied in this state. *See State v. Roode,* 643 S.W.2d 651, 652–3 (Tenn.1982).

■ In determining whether the defendant manifested a subjective expectation of privacy, we are aware that neither the Fourth Amendment nor Article I, Section 7 protects what a citizen "knowingly exposes to the public". *See Katz,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576; *State v. Marcus Ellis,* No. 01–C–01–9001–CR–00021, 1990 WL 198876 Robertson County (Tenn. Crim.App. filed December 12, 1990, at Nashville). That which a citizen knowingly exposes to the public is that in which he or she has not manifested subjective expectation of privacy.

However, in the instant case it is apparent that the defendant did not knowingly expose the truck to the public. His truck was behind a solid, completely closed garage door. While the only other garage door was open, it had been raised a mere one and a half feet to allegedly enable the dog to come and go from the garage. Therefore, the defendant clearly manifested a subjective expectation of privacy.

■ The issue hence becomes whether society is prepared to recognize as reasonable the defendant's expectation of privacy when he left the garage door open one and a half feet. "In pursuing this inquiry, we must keep in mind that '[t]he test of legitimacy is not whether the individual chooses to conceal assertedly "private" activity,' but instead 'whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.'" *Ciraolo,* 476 U.S. 207, 212, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (quoting *Oliver v. United States,* 466 U.S. 170, 182–83, 104 S.Ct. 1735, 1743, 80 L.Ed.2d 214 (1984)). Society has recognized that the resident of a home usually has a reasonable expectation of privacy in a garage. *See Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932). Therefore, in such areas where a reasonable expectation of privacy is usually accorded, "[a]n officer is permitted the same license to intrude as a reasonably respectful citizen". *State v. Seagull,* 95 Wash.2d 898, 632 P.2d 44, 47 (1981).

While the factual situation makes this a case of first impression in Tennessee, support exists for our conclusion in the decisions of our sister states. *See e.g. State v. Cloutier,* 544 A.2d 1277 (Me.1988). (Since officer did not bend over or move any object in order to improve his view, his observation of the marijuana while simply passing by the open window was not a search for purposes of Fourth Amendment); *State v. Adams,* 378 So.2d 72 (Fla.App.1979) (Officer's standing on chair and peering into window was held to violate occupants' reasonable expectation of privacy); *People v. Cagle,* 98 Cal.Rptr. 348, 351, 21 Cal.App.3d 57, 66 (1971) (Officer strayed from "normal access routes" when he peered into a bathroom window. His action was an unreasonable invasion of privacy).

It is the determination of this Court that Officer Poteete's actions of getting on his hands and knees with his head very near to the ground and looking into the garage are not those actions which society would permit of a reasonably respectful citizen. In making such a judgment, this Court has attempted to strike a balance between the individual's rea-

sonable expectation of privacy and the permissible actions of an officer of the law.

We take great caution in rendering impermissible the actions of an officer employing only his or her bare physical faculties. However, Officer Poteete did not just sway to one side or the other to observe something. He did not even merely bend over slightly to observe something. He got down on his hands and knees with his head almost touching the ground and looked into the garage. We, therefore, conclude that the officer's actions constituted a warrantless search which violated the personal and societal values protected by the Fourth Amendment and Article I, Section 7.

■ While the State brought this appeal, the defendant raised three additional matters. The second issue before us is whether the search warrant contained reckless misrepresentations of material facts. It is true that Officer Poteete reported in the search warrant affidavit certain information which later was discovered to be incorrect. He stated that the anonymous informer had told the police that the car would be parked in the garage. The informant had actually told the officers that the truck would be parked behind the house. In addition, the officer reported that the defendant had received a parking ticket on the very same day of the accident, March 16, 1990. Actually, the defendant had received a parking ticket on February 28, 1990, and had paid for that ticket on March 16, 1990. Faced with these facts, the trial court determined that these incorrect statements were made with a "reckless disregard for the truth". The record supports this finding.

The Tennessee Supreme Court has set forth two circumstances which authorize impeachment of a search warrant affidavit: (1) when "a false statement [is] made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and (2) [when] a false statement, essential to the establishment of probable cause, [is] recklessly made". *State v. Little,* 560 S.W.2d 403, 407 (Tenn.1978). The trial court concluded that neither of these circumstances was present in the instant case. We agree with that conclusion.

At the evidentiary hearing the officers simply had no explanation for the mistakes in the affidavit. Although the trial court expressed concern that the facts reported by the informant may have been somehow changed to fit what was actually found, the trial court did not conclude that there was an intent to deceive the court. Having reviewed the entire situation as reflected in the record, we agree with the trial court's determination.

We further determine that the trial court appropriately dismissed the second circumstance also. Although the inaccuracies were reckless misrepresentations, they were not reckless misrepresentations of material fact. The information regarding where the vehicle was parked and when a parking ticket was received were not essential to the assessment of whether the affidavit stated probable cause. Essential facts were, for example, that the informant reported the defendant coming in late on the night of the accident; that the informant mentioned that the vehicle was a Ford Bronco; and that the informant stated the vehicle had sustained front end damage. Unlike the information regarding the parking ticket and the place where the vehicle was parked, these facts greatly aided the magistrate in determining whether the affidavit stated probable cause. As such, this contention provides no basis for invalidating the search warrant.

■ The third issue raised on appeal is whether the search warrant affidavit, absent the information attained from the contested search, would be sufficient to support probable cause. We concluded above that the contested search was a warrantless search in violation of the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution, and consequently, the information attained therefrom was tainted and inadmissible. The trial court held and the State concedes that if the information attained from the contested search was inadmissible, the search warrant affidavit would be insufficient to support a finding of probable cause. We affirm this determination.

In *State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989), our Supreme Court rejected the totality of circumstances test, which the United States Supreme Court expounded in

*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Our Supreme Court instead reaffirmed the two-prong *Aguilar–Spinelli* test as the standard to be applied to a search warrant based upon an unknown or unidentified citizen informant. *Jacumin,* 778 S.W.2d 430, 436. The latter test requires that the affidavit establish: (1) the informant's "basis of knowledge" and (2) the informant's "veracity". *Jacumin,* 778 S.W.2d 430, 432; *see Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Essentially, the first prong "inquire[s] as to how the informant concluded the criminal activity [had taken] place: 'How does he [or she] know that?' The second 'prong' inquire[s] into the informant's veracity: 'Why do I believe him [or her]?'" Raybin, *Criminal Practice and Procedure,* § 18.58, p. 584.

The affidavit entirely fails to indicate the basis of the informant's knowledge as it makes no mention of how the informant obtained the information. Since the first prong was clearly not established, there is no need to analyze whether the second prong was proven. We conclude that the trial court correctly found the information in the affidavit, excluding the evidence from the contested search, insufficient to support probable cause.

The fourth and final issue before us is whether the appeal in this case was timely filed and, therefore, should not be dismissed. This Court examined this issue when the defendant filed a Motion to Dismiss Appeal and Memorandum in Support Thereof on January 17, 1992. On February 5, 1992, this Court denied the motion, declaring that justice required the appeal to proceed. We reaffirm that determination today. Consequently, this issue is without merit.

Having examined each contention raised, it is the determination of this Court that the trial court's order suppressing certain evidence be affirmed.

WADE and TIPTON, JJ., concur.